ABELSON HERRON HALPERN LLP
  Michael Bruce Abelson (State Bar No. 130739)
  Leslie A. Pereira (State Bar No. 180222)
333 South Grand Avenue, Suite 1550
Los Angeles, California 90071-1559
Telephone: (213) 402-1900
Facsimile: (213) 402-1901
mabelson@abelsonherron.com
lpereira@abelsonherron.com

Attorneys for Defendants and Counter-Claimants
The Growing Concern, LLC; Paul Garrett; The
Garrett Group, LLC; and Scott Garrett

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE GROWING CONCERN, LLC, *et al.*, <br><br> Defendants. <br><br> AND RELATED CROSS-ACTION | CASE NO. 2:14-CV-07509-GW(MANx) <br><br> **DEFENDANT PAUL GARRETT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing <br> Date: June 1, 2015 <br> Time: 8:30 a.m. <br> Place: Courtroom 10 <br><br> Action Filed: August 29, 2014 |



CV-07509-GW(MANx)   DEFENDANT PAUL GARRETT'S
NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

**TO PLAINTIFFS NATIONWIDE MUTUAL INSURANCE COMPANY ("Nationwide") and AMCO INSURANCE COMPANY ("AMCO") AND TO THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 1, 2015 at 8:30 a.m., or as soon thereafter as counsel may be heard, in the above-captioned court, located at 312 North Spring Street, Los Angeles, California 90012 (Courtroom 10), Defendant Paul Garrett will and hereby does move this Court for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), finding that undisputed facts establish that Nationwide and AMCO cannot present evidence essential to their case against Paul Garrett and he is therefore entitled to summary judgment.

Paul Garrett's motion is made as to all causes of action against Paul Garrett on the grounds that there is no genuine issue as to any material fact, and the undisputed evidence establishes that Nationwide and AMCO failed to satisfy one of the three prerequisites for their reimbursement claims against Paul Garrett: Namely, they did not make him an express offer permitting him to assume his own defense in the Crown Fire Lawsuits after he objected to their settling on his behalf.

This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Law; the concurrently filed Declarations of Craig Dunkin, Michael Bruce Abelson and Leslie A. Pereira; Paul Garrett's Statement of Uncontroverted Facts and Conclusions of Law; all pleadings and papers on file in this action; and upon such other matters as may be presented to the Court at the time of the hearing.

Pursuant to local rule, the parties met-and-conferred on April 3, 2015 regarding the content of this Motion but were unable to resolve their differences.

/ / /

/ / /

/ / /

/ / /



14-CV-07509-GW(MANx)

i

DEFENDANT PAUL GARRETT'S
NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | Dated:  May 4, 2015 | **ABELSON HERRON HALPERN LLP** |
| 2 | | Michael Bruce Abelson |
| | | Leslie A. Pereira |
| 3 | | |
| 4 | | |
| | | By  /s/ Leslie A. Pereira |
| 5 | | Leslie A. Pereira |
| 6 | | Attorneys for Defendants and Counter-Claimants |
| | | The Growing Concern, LLC; Paul Garrett; |
| 7 | | The Garrett Group, LLC; and Scott Garrett |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................... 2

    A.   The Crown Fire Lawsuits Filed Against Paul Garrett ......................... 2

    B.   Neither Nationwide Nor AMCO Defended Paul Garrett
        in the Crown Fire Lawsuits .................................................................. 3

    C.   The Crown Fire Lawsuits Are Resolved .............................................. 4

    D.   Nationwide and AMCO Sue Paul Garrett for
        Reimbursement ..................................................................................... 8

III. ARGUMENT .................................................................................................... 8

    A.   Applicable Legal Standards ................................................................. 8

        1.   Summary Judgment Standards ................................................... 8

        2.   Evaluation of Insurers' Rights to Reimbursement .................... 9

    B.   Undisputed Facts Demonstrate That Nationwide and
        AMCO Cannot Establish That They Complied with Blue
        Ridge's Third Prerequisite ................................................................ 11

IV.  CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

*FEDERAL CASES*

Allstate Ins. Co. v. Baglioni,
   2014 U.S. App. LEXIS 45 (9th Cir. Jan. 2, 2014) ....................................... 1, 14

Allstate Ins. Co. v. Baglioni,
   No. CV 11-06704 DDP (C.D. Cal. Mar. 2, 2012) ............................ 1, 10, 11, 13

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) .................................................................................. 9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ............................................................................... 8, 9

Homedics, Inc. v. Valley Forge Ins. Co.,
   315 F.3d 1135 (9th Cir. 2003) ..................................................................... 8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) ................................................................................... 9

State Nat'l Ins. Co. v. Khatri,
   U.S. Dist. LEXIS 132167 (N.D. Cal. Sept. 13, 2013) ..................................... 11

*STATE CASES*

Blue Ridge Insurance Company v. Jacobsen,
   25 Cal. 4th 489 (2001) ....................................................................... passim

*FEDERAL RULES*

Federal Rule of Civil Procedure 56(a) ............................................................. 8, 14

Federal Rule of Civil Procedure 56(e) ................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This may be the world's easiest motion for summary judgment.

It relies on minimal undisputed facts and presents the narrow issue of whether Nationwide and AMCO satisfied the last of three "prerequisites" necessary to their reimbursement claims against Paul Garrett. Specifically, well-established California law holds that an insurer must make an express offer allowing its insured to assume his own defense if the insurer wishes to settle a disputed claim over its insured's objection. See Allstate Ins. Co. v. Baglioni, No. CV 11-06704 DDP (C.D. Cal. Mar. 2, 2012) (Dean Pregerson, J.) (dismissing reimbursement claim because insurer failed to make an express offer to the insureds allowing them to assume their defense),[1] aff'd, 2014 U.S. App. LEXIS 45 (9th Cir. Jan. 2, 2014) (non-precedential) ("The district court did not err in applying the prerequisites from [Blue Ridge] to dismiss Allstate's First Amended Complaint seeking reimbursement from Baglioni").[2]

Here, the undisputed facts establish that Nationwide and AMCO cannot demonstrate that they made Mr. Garrett an express offer permitting him to assume his own defense after he objected to their settling the Crown Fire Lawsuits on his behalf. What is more, after Mr. Garrett expressly *demanded* that he be permitted to continue defending himself against the Crown Fire Lawsuits, Nationwide and AMCO ignored him, and settled the cases out from under him.

California law does not allow insurers to play such games with their insured's money. Rather, when the insurer and insured disagree about whether to settle a lawsuit, the insured must be allowed to refuse the settlement and defend himself.

---

[1] A copy of the District Court's decision is attached as Exhibit 12 to the Declaration of Leslie A. Pereira ("Pereira Decl."), filed concurrently herewith.

[2] A copy of the Ninth Circuit's unpublished decision is attached as Exhibit 13 to the Pereira Decl.

That choice caps the insurer's liability by removing the hammer of liability for bad faith refusal to settle, and places greater risk on the insured. Alternatively, the insured may decline to take over his defense, but then the insurer may settle without the insured's consent, cap its liability, and then seek reimbursement for the settlement payment from the insured. Under no circumstances, however, does California law permit an insurer to settle a case the insured does not want settled, *and is willing to defend himself*, and then demand that the insured reimburse it for the settlement payment. The undisputed record will clearly show that that's what Nationwide and AMCO seek to do here.

Accordingly, a finding that Nationwide and AMCO do not have a legally viable claim for reimbursement from Paul Garrett is both necessary and proper.

## II. FACTUAL BACKGROUND

### A. The Crown Fire Lawsuits Filed Against Paul Garrett

In July, 2012, the California Department of Forestry and Fire Protection sued Paul Garrett and others in connection with a 2010 wildfire known as the Crown Fire (the "Cal Fire Action"). See Paul Garrett's Uncontroverted Fact ("PG UF") # 1. The Cal Fire Action sought more than $7 million in damages. Id.

Thereafter, five additional actions arising out of the Crown Fire were commenced against Paul Garrett and others. See PG UF # 2. These latter actions were filed by insurers or property owners claiming fire-related damages (the "Subrogation Actions"). Id. Collectively, the Subrogation Actions sought more than $12.4 million in damages. Id.

For simplicity, the Cal Fire Action and the five Subrogation Actions shall be referred to collectively herein as the "Crown Fire Lawsuits." The Crown Fire Lawsuits also named as defendants the following parties that shall be referred to collectively herein as "Other Insureds": The Growing Concern, LLC, The Garrett Group, LLC, Scott Garrett, Eugenio Calixto and Esteban Vazquez. See PG UF # 1-2.

### B. Neither Nationwide Nor AMCO Defended Paul Garrett in the Crown Fire Lawsuits

The Crown Fire Lawsuits were tendered to Associated Indemnity Company (a/k/a Fireman's Fund) (hereinafter "Associated Indemnity"), under two separate policies issued to The Garrett Group, LLC: *One*, Policy No. MZC 80456157, a primary liability policy with limits of $1MM for the period April 13, 2010 to April 13, 2011; and *Two*, Policy No. XAE 73759466, an excess policy with limits of $5MM for the period April 13, 2010 to April 13, 2011. See PG UF # 3. Associated Indemnity agreed to defend Paul Garrett, and did so through the conclusion of those actions. See PG UF # 4.

The Crown Fire Lawsuits were also tendered to Nationwide and AMCO under the following policies:

- **The Growing Concern Primary Policy**: Nationwide Policy No. FPK FMP 7871301991, a primary liability policy with limits of $1MM for the period May 1, 2010 to May 1, 2011. See PG UF # 5.
- **The Growing Concern Excess Policy**: AMCO Policy No. FPK FAEA 7871301991, an excess/umbrella liability policy with limits of $5MM for the period May 1, 2010 to May 1, 2011. See PG UF # 6.
- **The Garrett Ranch Primary Policy**: Nationwide Policy No. FPK FMP 7871166564, a primary liability policy with limits of $1MM for the period September 19, 2009 to September 19, 2010. See PG UF # 5.
- **The Garrett Ranch Excess Policy**: AMCO Policy No. FPK FAEA 7871166564, an excess/umbrella liability policy with limits of $5MM for the period September 19, 2009 to September 19, 2010. See PG UF # 6.

On November 19, 2012, Nationwide and AMCO both denied coverage to Mr. Garrett for the Cal Fire Action. See PG UF # 7. On July 3, 2013, AMCO stated there was a "potentiality of coverage" for Paul Garrett under the AMCO policy, and on July 31, 2013 AMCO stated that it would defend Mr. Garrett "*if no other insurance exists under which [he is] entitled to a defense.*" See PG UF # 8-9.

1  However, AMCO continued, since "we understand that Associated Indemnity is
2  defending Paul Garrett," AMCO did not appoint counsel to defend Mr. Garrett but
3  left Associated Indemnity to do so.  See PG UF # 9.

### C. The Crown Fire Lawsuits Are Resolved

On November 14, 2014, all parties to the Crown Fire Lawsuits participated in a mediation with retired Los Angeles Superior Court Judge Peter Lichtman.  After the mediation, Cal Fire and the claimants in the Subrogation Actions made separate written settlement demands.  See PG UF # 10-11.  Cal Fire offered to dismiss its action in exchange for payment of $7.9MM, and the claimants in the Subrogation Actions agreed to accept $10MM in exchange for dismissals of their actions (the "First Settlement Demands").  Id.  Both sets of claimants sought a response by November 25, 2013.  Id.

The First Settlement Demands were transmitted to Associated Indemnity, and it agreed to contribute its $6 million limits.  See PG UF # 12.  The First Settlement Demands were also submitted to Nationwide and AMCO.  On November 21, 2013, Nationwide and AMCO sent Paul Garrett's counsel a letter stating that "AMCO and Nationwide will make the sum of $11,900,000 available to settle the claims" subject to the following:

> "However, pursuant to the principles and guidelines established by the California Supreme Court in Blue Ridge Insurance Company v. Jacobsen (2001) 25 Cal. 4th 489, AMCO and Nationwide will settle the claims under a full and complete reservation of rights, *including the right to seek reimbursement from Paul Garrett*, The Paul Garrett's Trust, Max Goldring Trust, Scott Garrett, The Garrett Ranch, and The Garrett Group."
> (Hereinafter, the "Blue Ridge Reservation") (italics supplied).

See PG UF # 13.

Because of AMCO and Nationwide's Blue Ridge Reservation, Paul Garrett and the Other Insureds sought to negotiate settlements with the Crown Fire

1  claimants that were lower than the First Settlement Demands. Thus, the deadline for
2  defendants' response to the First Settlement Demands was extended, and a
3  subsequent mediation was scheduled for November 26, 2013 (the "Second
4  Mediation Session").

5  At the Second Mediation Session, Cal Fire and the claimants in the
6  Subrogation Actions lowered their prior demands, and stated that they would settle
7  their claims and dismiss the Crown Fire Lawsuits in exchange for a total payment of
8  $12 million. See PG UF # 14. Because Associated Indemnity had already agreed to
9  commit its $6 million limits to the settlement, the Garrett Parties requested that
10 Nationwide and AMCO contribute $6 million (rather than $11.9 million) so that a
11 $12 million total settlement could be reached. See PG UF # 15. While Nationwide
12 and AMCO confirmed at the mediation that they would fund the remaining $6
13 million needed to settle the case, they (again) stated that their funding would be
14 subject to a Blue Ridge Reservation. See PG UF # 16. Counsel for Paul Garrett
15 informed Nationwide and AMCO that Mr. Garrett objected to a settlement on those
16 terms and would defend himself in the Crown Fire Lawsuits if the insurers did not
17 withdraw their reservation of rights against him. See PG UF # 17. Accordingly, the
18 Crown Fire Lawsuits did not settle at mediation. See PG UF # 18.

19 Several hours after the Second Mediation Session, Mr. Garrett's counsel
20 wrote to Nationwide and AMCO stating, in relevant part, the following:

> "As you know, Associated Indemnity Corp. (aka Fireman's Fund) has committed its full limits of $6MM, without any reservation of rights, to settle this matter. For its part, you have confirmed that Nationwide/AMCO is willing to fund the remaining $6MM to settle the Crown Fire Litigations on the terms demanded.
>
> Unfortunately, we understand that Nationwide/AMCO's commitment is subject to its purported "Blue Ridge" reservation (the "Blue Ridge Reservation"). ***That being the case, Paul Garrett will not consent to a settlement where Nationwide/AMCO's funds are subject to the Blue Ridge Reservation or any other reservation.*** Moreover, we

disagree that Nationwide/AMCO have any right to assert a Blue Ridge Reservation or otherwise, given the insurers' failure and refusal to provide a full and immediate defense to all of the Garrett entities when required. Accordingly, request is made that you promptly confirm in writing that Nationwide/AMCO will pay the remaining $6MM to settle the Crown Fire Litigations without reservations -- Blue Ridge or otherwise." (Boldface added.)

See PG UF # 19.

The next day, at 12:25 p.m., counsel for Nationwide and AMCO sent Mr. Garrett's counsel a letter. See PG UF # 20. In it, Nationwide and AMCO agreed that they would contribute $6 million to settle the Crown Fire Lawsuits. Id. However, they again stated that their payment would be "pursuant to the principles and guidelines established by the California Supreme Court in Blue Ridge Insurance Company v. Jacobsen (2001) 25 Cal. 4th 489." Id. More specifically, Nationwide and AMCO stated that they intended to settle the claims "under a full and complete reservation of rights, *including the right to seek reimbursement from Paul Garrett*, The Paul Garrett's Trust, Max Goldring Trust, Scott Garrett, The Garrett Ranch, and The Garrett Group" (italics supplied). Id. The insurers' letter did not make an express offer to Mr. Garrett permitting him to continue his defense. Id.

Upon hearing that Nationwide and AMCO would only contribute to the settlement pursuant to a right to seek reimbursement from Paul Garrett, Mr. Garrett's counsel immediately responded as follows:

"David:

We received your letter of this day regarding AMCO and Nationwide's intent to accept the $12MM settlement demand made last night to The Garrett Group and The Growing Concern.

Suffice it to say the insureds are disappointed that AMCO/Nationwide are refusing to pay the proposed settlement free of all reservations. AMCO/Nationwide's reservations are without merit and should be withdrawn immediately. Moreover, AMCO/Nationwide have no right to settle on behalf of Paul Garrett, who the insurers are not defending in the underlying actions. As noted by the claimants in the underlying actions, Paul Garrett has no personal liability for the

> Crown Fire and claimants are not seeking settlement funds from him personally. Settlement funds are only being sought from The Garrett Group and The Growing Concern. ***For this reason, exception is taken to AMCO/Nationwide purporting to make payment on behalf of Paul Garrett, who has previously refused to have settlement funds paid on his behalf. Despite all this, AMCO/Nationwide is seemingly determined to disregard Mr. Garrett's express desire to continue to defend himself at his own expense through trial. That being the case, any payment by AMCO/Nationwide on behalf of Mr. Garrett will be that of a volunteer, and in direct contravention of Mr. Garrett's rights.***
>
> To be absolutely clear, consent to settle here is only being conveyed on behalf of The Garrett Group and The Growing Concern and, indeed, they demand that AMCO/Nationwide settle the underlying claims on their behalf immediately and without reservations." (Italics and boldface added.)

See PG UF # 21.

Nationwide and AMCO did not acknowledge Mr. Garrett's request to continue his own defense. See PG UF # 22. Rather, *only 35 minutes later*, Nationwide and AMCO emailed a letter directly to Judge Lichtman (the mediator), counsel for Cal Fire, and counsel for the subrogation claimants stating: "By this letter, I confirm AMCO and Nationwide's agreement to the terms of the [$12MM] settlement." See PG UF # 22. Thus, with full knowledge that Paul Garrett had <u>not</u> consented to the settlement, and had expressed his desire to represent himself in the Crown Fire Lawsuits, Nationwide and AMCO further stated as follows:

> "The terms of the settlement are that each of the plaintiffs will dismiss each of the complaints with prejudice. Each of the plaintiffs will execute a written release that releases all of the defendants to all of the lawsuits by name, and also The Paul Garrett's Trust by name. Each of the plaintiffs will also release each owner and purported owner of the property where the fire originated, as well as all other persons and entities." (Italics supplied.)

Id.

Thereafter, the Crown Fire Lawsuits were settled, with payment of $6 million by Associated Indemnity, and payment of $6 million by Nationwide and AMCO,

1  and thereafter dismissed. See PG UF # 24. Paul Garrett did not sign the settlement
2  agreements, but was included within the scope of the release. See PG UF # 25.
3      **D.**     **Nationwide and AMCO Sue Paul Garrett for Reimbursement**
4      Nationwide and AMCO brought this action on August 29, 2014 by filing a
5  "Complaint for Reimbursement of Settlement." Based on the complaint's six
6  separate causes of action, Nationwide and AMCO seek a judgment in the amount of
7  $6 million, plus interest, from Paul Garrett (and others) based on their contentions
8  that (1) they properly reserved their rights to seek reimbursement under Blue Ridge;
9  and (2) there is no coverage under their policies for the Crown Fire Lawsuits.
10 **III. ARGUMENT**
11     The legal issue here is a narrow one: Do undisputed facts establish that
12 Nationwide and AMCO cannot satisfy the third prerequisite for a reimbursement
13 claim under Blue Ridge? If so, summary judgment must be granted for Paul Garrett.
14     **A.**     **Applicable Legal Standards**
15     As a matter of procedure, federal summary judgment standards guide this
16 Court's determination of Paul Garrett's Motion. That said, this Court, sitting in
17 diversity, is obligated to apply California's substantive law (the law of the forum) to
18 the controlling issue presented here: An insurer's right to reimbursement of a
19 settlement payment made on behalf of an insured. See e.g., Homedics, Inc. v.
20 Valley Forge Ins. Co., 315 F.3d 1135 (9th Cir. 2003).
21     **1.**     *Summary Judgment Standards*
22     Summary judgment is proper if the pleadings, the discovery and disclosure
23 materials on file, and any affidavits show that there is no genuine issue as to any
24 material fact and that the movant is entitled to judgment as a matter of law. See Fed.
25 R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the
26 absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,
27 323 (1986). The moving party, however, has no burden to disprove matters on
28 which the non-moving party will have the burden of proof at trial. The moving party

1 need only demonstrate to the Court that there is an absence of evidence to support
2 the non-moving party's case. Id. at 325.
3      Once the moving party has met its burden, the burden shifts to the non-
4 moving party to "designate 'specific facts showing that there is a genuine issue for
5 trial.'" Id. at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-
6 moving party must "do more than simply show that there is some metaphysical
7 doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
8 Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . .
9 will be insufficient; there must be evidence on which the jury could reasonably find
10 for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252
11 (1986).

### 2. *Evaluation of Insurers' Rights to Reimbursement*

13      In California, insurers who pay to settle claims later determined to be
14 noncovered – even when they do so over their insured's objections – may seek
15 reimbursement of their payments from their insureds *if* several "prerequisites" have
16 been satisfied. Blue Ridge Insurance Company v. Jacobsen, 25 Cal. 4th 489, 502
17 (2001). Specifically, an insurer must show that it has complied with all of the
18 following: "(1) a timely and express reservation of rights; (2) an express notification
19 to the insureds of the insurer's intent to accept a proposed settlement offer; and (3)
20 *an express offer to the insureds that they may assume their own defense when the*
21 *insurer and insureds disagree whether to accept the proposed settlement*." Id.
22 (hereinafter, the "Blue Ridge Prerequisites").
23      Factually, Blue Ridge involved a situation where Blue Ridge Insurance
24 Company was defending its insureds (the Jacobsens) against an underlying tort
25 claim. Id. 493. After the claimants in the underlying action made a settlement
26 demand within the limits of Blue Ridge's policy, Blue Ridge determined it was
27 reasonable and informed the Jacobsens that it intended to settle the action pursuant
28 to a reservation of rights to seek reimbursement against the Jacobsens. Id. at 494.

1  Blue Ridge offered to allow the Jacobsens to assume their own defense if they
2  objected to the settlement. <u>Id.</u> The Jacobsens objected to the settlement, refused to
3  assume their own defense, and demanded that Blue Ridge settle without any
4  reservations. <u>Id.</u> at 495. Blue Ridge then settled the claim over the Jacobsens
5  objection and sought reimbursement from the Jacobsens. <u>Id.</u>

6  In the subsequent reimbursement action, the <u>Blue Ridge</u> Court held that Blue
7  Ridge behaved properly, and was entitled to seek reimbursement from the
8  Jacobsens. Specifically, it noted that Blue Ridge (1) sent a timely and express
9  reservation of rights (2) notified the Jacobsens of its intent to accept a proposed
10 settlement and (3) expressly offered to allow the Jacobsens to assume their own
11 defense. The Court found that all three actions were "prerequisites" to a later
12 reimbursement claim against the insured (the "Blue Ridge Prerequisites"). The
13 Court explained that the idea behind the Blue Ridge Prerequisites was to reach a fair
14 balance between the rights of insurers and insureds. According to the Court:
15 "[W]ere we to conclude insureds could, as in this case, refuse to assume their own
16 defense, insisting an insurer settle a lawsuit or risk a bad faith action, but at the same
17 time refuse to agree the insurer could seek reimbursement should the claim not be
18 covered, the resulting Catch-22 would force insurers to indemnify noncovered
19 claims." <u>Blue Ridge</u>, 25 Cal. 4th at 502. Instead, giving insureds the option of
20 assuming their own defense where they object to a proposed settlement, allows them
21 to 'put their money where their mouth is,' and removes the risk of a threatened bad
22 faith refusal to settle claim from the insurer.

23 Subsequent decisions interpreting <u>Blue Ridge</u> make clear that the Blue Ridge
24 Prerequisites are mandatory and reimbursement claims should be dismissed absent
25 compliance. See <u>Allstate Ins. Co. v. Baglioni</u>, No. CV 11-06704 DDP (C.D. Cal.
26 Mar. 2, 2012) (Dean Pregerson, J.) (dismissing reimbursement claim because insurer
27 failed to make an express offer to the insureds allowing them to assume their
28 defense) (opinion attached as Ex. 12 to Pereira Decl.), <u>aff'd</u>, 2014 U.S. App. LEXIS

45 (9th Cir. Jan. 2, 2014) (non-precedential) ("The district court did not err in applying the prerequisites from [Blue Ridge] to dismiss Allstate's First Amended Complaint seeking reimbursement from Baglioni"); see also State Nat'l Ins. Co. v. Khatri (N.D. Cal.) 2013 U.S. Dist. LEXIS 132167, *26 (Sept. 13, 2013) (to seek reimbursement for noncovered claims insurer "must make" express offer to insureds to assume own defense).

### B. Undisputed Facts Demonstrate That Nationwide and AMCO Cannot Establish That They Complied with Blue Ridge's Third Prerequisite

In this case, there can be no doubt that Nationwide and AMCO failed to satisfy Blue Ridge's third prerequisite in that they did not make an express offer to Paul Garrett that he could assume his own defense in the Crown Fire Lawsuits. A chronology of the parties' key communications during the settlement process makes this plain:

- **November 14**: Paul Garrett (and the other insured Defendants) demanded Nationwide/AMCO contribute $11.9MM to a global settlement of $17.9MM.

- **November 21**: Nationwide/AMCO agree to contribute $11.9MM pursuant to a right to seek reimbursement from Mr. Garrett and the other insured defendants.

- **November 21-26**: Paul Garrett and others negotiate with Crown Fire claimants in an effort to get the lowest possible demand from claimants.

- **November 26**: At the Second Mediation Session, the Crown Fire claimants drop their demand to $12MM (total) ; Nationwide/AMCO agree to contribute $6MM pursuant to a reservation of rights; Paul Garrett objects to the settlement, and tells them not to settle for him, he will defend himself.

- **November 26 (after mediation)**: Paul Garrett's counsel confirms his position in writing: "Paul Garrett will not consent to a settlement where

Nationwide/AMCO's funds are subject to the Blue Ridge Reservation or any other reservation."

- **November 27 (12:25 p.m.)**: Nationwide/AMCO respond to Paul Garrett's objection by stating that they intend to settle the claims "under a full and complete reservation of rights, *including the right to seek reimbursement from Paul Garrett …*" No offer was made by Nationwide/AMCO allowing Paul Garrett to assume his defense.

- **November 27 (2:50 p.m.)**: Paul Garrett's counsel responded again, stating: "[E]xception is taken to AMCO/Nationwide purporting to make payment on behalf of Paul Garrett, who has previously refused to have settlement funds paid on his behalf. Despite all this, AMCO/Nationwide is seemingly determined to disregard Mr. Garrett's express desire to continue to defend himself at his own expense through trial. That being the case, any payment by AMCO/Nationwide on behalf of Mr. Garrett will be that of a volunteer, and in direct contravention of Mr. Garrett's rights."

- **November 27 (4:25 p.m.)**: Nationwide/AMCO *accepted* the Crown Fire claimants' settlement demand.

Throughout the process of settling the Crown Fire Lawsuits, Nationwide and AMCO <u>never</u> made an express offer allowing Paul Garrett to assume his own defense. What is worse, however, is that despite the insurers' failure to make the requisite offer to Paul Garrett, Mr. Garrett took it upon himself to inform them that he was choosing to exercise his right to assume his own defense *and they ignored his request*. <u>See</u> PG UF # 19-22.

At the Second Mediation Session on November 26, after Nationwide and AMCO stated their intention to accept claimants' $12MM offer and pay $6MM of it, Mr. Garrett's counsel told counsel for Nationwide and AMCO that unless they withdrew their reservation of the right to seek reimbursement from Mr. Garrett

personally, he objected to their settling on his behalf, did not authorize payment of any amount on his behalf, and would defend himself going forward.  See PG UF # 17.  Upon receiving this objection to the settlement, and those that followed (see PG UF # 19, 21), Nationwide and AMCO did not make an express offer to allow him to continue his defense.  Rather, their response on November 27 (at 12:25) simply ignored the fact that Mr. Garrett had stated he would assume his own defense.  Mr. Garrett wrote back again, two hours and 25 minutes later.  He stated again, in no uncertain terms, that Nationwide and AMCO were not to settle on his behalf, and he would defend himself going forward.  Nationwide and AMCO completely ignored this communiqué.  Instead, 35 minutes later, with full knowledge of Mr. Garrett's objections and requests to assume his own defense, they wrote to the mediator and Crown Fire claimants and *accepted* the settlement.

Mr. Garrett had every right to take control of the claim against him.  Whether he viewed the claim against him as having no merit, or whether he simply wished to dispute it, is immaterial.  This is one of the rights recognized by the Court in Blue Ridge and championed in that decision.  Without it, insurers would be free to play "fast and loose" with their insured's money by settling cases over their objections and then seeking reimbursement thereafter.

The record here is clear and undisputed:  Nationwide and AMCO never offered to allow Mr. Garrett to defend himself.  And when Mr. Garrett demanded that he be allowed to do so, they ignored him and settled the Crown Fire Lawsuits.

A federal district judge who had occasion to consider the very issue presented here found the Blue Ridge Prerequisites mandatory.  See Allstate Ins. Co. v. Baglioni, No. CV 11-06704 DDP (C.D. Cal. Mar. 2, 2012) (Dean Pregerson, J.) (dismissing reimbursement claim because insurer failed to make an express offer to the insureds allowing them to assume their defense),[3] aff'd, 2014 U.S. App. LEXIS

---

[3] A copy of the decision is attached as Exhibit 12 to Pereira Decl.

1  45 (9th Cir. Jan. 2, 2014) (non-precedential).  Judge Pregerson noted that "Blue
2  Ridge itself provides no exception to its three simple requirements," and declined to
3  create one himself.  Rather, according to Judge Pregerson, "Blue Ridge sets forth
4  three clear requirements, with which insurers can easily comply by initially
5  reserving their rights, then sending a single letter – informing the insureds of the
6  insurer's intent to accept the settlement , and offering the insureds the opportunity to
7  assume their own defense."

8      In an unpublished decision, the Ninth Circuit unanimously agreed:

> "The district court did not err in applying the prerequisites from *Blue Ridge* [citation omitted] to dismiss Allstate's First Amended Complaint seeking reimbursement from Baglioni.  The third *Blue Ridge* prerequisite required Allstate to offer Baglioni the opportunity to assume his own defense before it accepted settlement without his consent, and Allstate concedes that it did not do so.  [Citation omitted.]  We are bound by *Blue Ridge*, and Allstate cannot state a claim for reimbursement against Baglioni without alleging compliance with each of *Blue Ridge*'s prerequisites."

15  See Ex. 13 to Pereira Decl. (italics in original).

16  **IV.  CONCLUSION**

17      For all of the foregoing reasons, Paul Garrett respectfully requests that this
18  Court enter an order, pursuant to FRCP Rule 56(a), finding that there is no genuine
19  dispute as to any material fact, and Nationwide and AMCO cannot present evidence
20  essential to their claims for reimbursement against Paul Garrett, such that he is
21  entitled to judgment as a matter of law.

Dated:  May 4, 2015        **ABELSON HERRON HALPERN LLP**
                                   Michael Bruce Abelson
                                   Leslie A. Pereira


                                   By /s/ Leslie A. Pereira
                                   Leslie A. Pereira
                                   Attorneys for Defendants and Counterclaimants
                                   The Growing Concern, LLC; Paul Garrett;
                                   The Garrett Group, LLC; and Scott Garrett